UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Case No. 12-20299
                                   Honorable Thomas L. Ludington

v.

WAYLON JAMES PEGO,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO REMAND
AND DENYING DEFENDANT'S MOTION TO BIFURCATE**

On April 24, 2012, Defendant Waylon Pego was arraigned in the Saginaw Chippewa Tribal Court for imprisoning and abusing his girlfriend, and he pled not guilty. After that, the tribal court charges were dropped, and Defendant was indicted on five counts in federal court. Once the initial investigation had occurred, a superseding indictment introduced twenty-seven additional charges against Defendant, alleging he had imprisoned and abused two other women between 2007 and 2011. Defendant has filed a motion to remand the case to the tribal court, and a motion to sever the charges relating to each individual victim into three separate trials. For the reasons that follow, both of Defendant's motions will be denied.

**I**[1]

In 2007, Defendant was in a relationship with N.M. Defendant was physically abusive, often beating her. Afterwards, he always apologized, in tears, and claimed it would never happen again — that he would stop drinking. One day in the fall of 2007, Defendant kicked N.M. in the ribs, strangled her, and held a knife to her throat. He threatened to kill her if she told

---

[1] This factual recitation is obtained from the government's responsive briefing to Defendant's motions. Defendant's two motions contain no factual allegations, nor does the indictment in the case. These facts are not necessarily undisputed, but are only offered to give context to the rulings.

anyone what happened, and refused to let her leave the house. When N.M. tried to call for help, Defendant smashed her phone to pieces. He held N.M. hostage in the bedroom for twenty-four hours, strangling her multiple times during that period, before she was finally released.

Defendant was involved with another woman, T.H., from January 2010 to June 2011. Defendant continued his violent streak. He assaulted T.H. on a weekly basis, grabbing her head and forcing his erect penis into her mouth without her consent. Around June of 2010, Defendant and T.H. were together at his mother's house, when T.H. received a text message from another man. Defendant smacked T.H. across the mouth, knocking her to the floor. He then straddled her, strangling her to the point that she could not breathe. When Defendant's father stepped in to help T.H., Defendant began strangling him, too.

After T.H. finally went home, Defendant appeared, apologized, and offered ice for her injuries. When she declined his assistance, Defendant raged again. He strangled her on her own bed until she passed out. When T.H. regained consciousness, she saw that Defendant had crushed her phone and computer, preventing her from communicating for help. He also stripped off her clothes, and hid her shoes and her car keys. T.H. found Defendant asleep in the living room, and she made her escape.

But Defendant heard T.H. open the door. He charged after her, grabbed her by the hair, and dragged her back inside. He threatened to make her disappear and make sure she never saw her children again. Defendant also told her his family had made Auggie Floyd disappear, and they could do it to her as well. Defendant then held T.H. against her will for approximately twenty-four hours before turning her loose.

By the spring of 2012 he had found a new girlfriend, A.H. Defendant forced A.H. to stay at his mother's house whenever he was at work. During March and April, Defendant repeatedly

sexually assaulted A.H. He performed non-consensual sexual acts on A.H. while she was sleeping. He grabbed her head and attempted to force his penis into her mouth, but she typically cried too hard to comply.

On April 23, 2012, Defendant and A.H. got into an argument, and fought until they eventually fell asleep. When they woke, Defendant apologized and said he wanted to work things out. A.H. said his actions were unforgivable, and called a male friend for a ride. Defendant did not like that, not one bit. He threw A.H. onto the bed, ripped her shirt off, and began to strangle her. He then locked the door, blocked it with a chair, and strangled A.H. until she passed out. When she came to, Defendant was dragging her around the room by her hair, screaming. When Defendant momentarily left the room, A.H. attempted to make a break for it out the window. Defendant snatched her back into the house by her hair, just as he had with T.H. When A.H. tried to call 911 for help, Defendant broke her phone and her laptop computer.

Defendant told A.H. he was going to kill her — that his dad and brother got away with murder, and he could, too. Defendant held A.H. against her will for over two hours, witnessed by both his mother and sister, who appeared too scared to help. Defendant then held A.H. by her hair in one hand and raised a golf club over her with the other, and was only stopped when the police arrived just in time.

Defendant was arraigned in the Saginaw Chippewa Indian Tribal Court on April 24, 2012. He was charged with Family Violence 4th Degree, Violence to Policemen or Judge, and Malicious Mischief; all relating to his conduct with A.H.

Defendant spoke briefly with his attorney before the arraignment. During the proceeding, Defendant stated on the record that his attorney was not able to be present, but had advised him to plead "not guilty" to the counts against him. Defendant then pled "not guilty." It should be

noted that in accordance with Tribal law, a lawyer is not required to be present during a defendant's arraignment.

After Defendant pled "not guilty," the tribal court charges were dismissed, and he was indicted in federal court on May 9, 2012. The indictment charged Defendant with unlawful imprisonment, assault with a dangerous weapon with intent to do bodily harm, domestic assault by an habitual offender, witness tampering, and interfering with electronic communications.

On July 25, 2012, Defendant was charged by superseding indictment with twenty-seven additional charges involving N.M. and T.H. Defendant now faces three counts of unlawful imprisonment, two counts of assault with a dangerous weapon with intent to do bodily harm, three counts of domestic assault by an habitual offender, one count of witness tampering, three counts of interfering with electronic communications, two counts of assault causing serious bodily injury, and eighteen counts of aggravated sexual abuse.

Defendant filed a motion to remand the case to the tribal court, alleging that his Sixth Amendment right to effective assistance of counsel was violated during his tribal court arraignment. He also filed a motion to bifurcate his trial, claiming that all of the counts relate to three different victims from three different time frames and he would be prejudiced if one jury were to hear all three cases in the same instance.

## II

### A

Defendant contends that this case should be remanded to the tribal court because he was denied effective assistance of counsel during his arraignment. This argument is untenable.

It is well established that the Sixth Amendment does not apply to Indian Tribes. *United States v. Doherty*, 126 F.3d 769, 777 (6th Cir. 1997) *abrogated on other grounds by Texas v. Cobb*, 121 S. Ct. 1335 (2001). *See also United States v. Shavanaux*, 647 F.3d 993, 996 (10th

Cir. 2011) ("The Bill of Rights does not apply to Indian Tribes."); *United States v. Percy*, 250 F.3d 720, 725 (9th Cir. 2001) ("The protections of the United States Constitution are generally inapplicable to Indian Tribes, Indian courts and Indians on the reservation."). Further, the Saginaw Chippewa Tribal Court specifically does not require attorneys to be present during arraignment proceedings. The fact that Defendant's attorney only spoke with him briefly before the arraignment, and then did not attend, does not amount to an infringement of Defendant's rights. There simply is no Sixth Amendment violation to remedy here.

Even if there were, this Court lacks jurisdiction to remand cases to other courts in these situations. The Sixth Circuit has consistently maintained that "a federal district court lacks jurisdiction to 'remand' a criminal case to state court to remedy constitutional errors." *United States v. McConer*, 530 F.3d 484, 494 (6th Cir. 2008) (quoting *United States v. Morris*, 470 F.3d 596, 600 (6th Cir. 2006)). Defendant articulates no argument indicating tribal courts should be treated differently.

Finally, only five of the thirty-two counts against Defendant were a part of his original tribal court arraignment. Even if the indictment in this case could be dismissed so Defendant could be charged in tribal court — a proposition wholly without support — only five counts would need to be dismissed. The other twenty-seven arose in the superseding indictment filed against Defendant on July 25, 2012. Defendant's motion to remand will be denied.

**B**

Defendant next claims that the counts against him for each victim should be severed, and tried separately, lest he be unjustly prejudiced. As before, Defendant's argument lacks merit.

The Federal Rules of Criminal Procedure provide, "The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with

or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). To the extent that joinder of offenses is consistent with providing the defendant with a fair trial, Rule 8 "is to be construed liberally to promote the goals of trial convenience and judicial efficiency." *United States v. Wirsing*, 719 F.2d 859, 862 (6th Cir. 1983). "Rule 8(a) does not require that all evidence relating to each charge be admissible in separate trials. Rather, '[w]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate.'" *Id.* (quoting *United States v. Anderson*, 642 F.2d 281, 284 (9th Cir. 1981)).

Joinder of related counts promotes "the goals of trial convenience and judicial efficiency." *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006) (quoting *Wirsing*, 719 F.2d at 862). *See also Zafiro v. United States,* 506 U.S. 534 (1993) ("Rules 8(b) and 14 are designed to promote economy and efficiency and to avoid a multiplicity of trials [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial"). The same conclusion has been found in numerous other cases. *See, e.g., United States v. Cobb*, 397 F. App'x 128, 136 (6th Cir. 2010) (The spirit of Rule 8(a) is to "promote the goals of trial convenience and judicial efficiency."); *United States v. Graham*, 275 F.3d 490, 512 (6th Cir. 2001) (forcing the government to put on three separate trials where the evidence was duplicative "would violate the spirit of Rule 8(a), which is to promote the goals of trial convenience and judicial economy."); *United States v. Gough*, 173 F.3d 857, at *6 (6th Cir. 1999) (unpublished table opinion) (Rule 14 is to be construed liberally to promote trial convenience and judicial efficiency); *United States v. Stillo*, 57 F.3d 553, 556–57 (7th Cir. 1995) (policy of liberal joinder enhances judicial efficiency and allows jury to hear "total story").

In this case, Defendant's alleged acts against all three victims are of similar character, and should be joined in the interests of convenience and efficiency. With the first victim, the government contends Defendant refused to let N.M. exit the premises where she was confined. He threatened to kill her, he strangled her, and he beat her. When she attempted to call for help, he smashed her phone to prevent it. With his second victim, Defendant's alleged actions were worse. He confined her, threatened her, beat her, broke her phone and computer, and then strangled her until she passed out. Defendant sexually abused her by forcing his erection into her mouth as she cried out for help. With the third victim, the government argues Defendant was no different. A.H. was confined, threatened, beaten, strangled, and sexually abused. Defendant broke her phone and computer as well. He raised a golf club above her head and was only stopped once police arrived. The thirty-two counts against Defendant relate to these acts, which due to their obvious similarity, warrant joinder under Federal Rule of Criminal Procedure 8(a).

When joinder of offenses in an indictment is permitted, if such a joinder "appears to prejudice a defendant . . . the court may order separate trials of counts[.]" Fed. R. Crim. P. 14(a). Defendant claims that the counts against each victim, as three separate occurrences, should be heard in three separate trials. In this case, even if the counts pertaining to each victim were severed, the evidence of Defendant's conduct would likely be admissible against him at each trial, mitigating the potential for any prejudice.

Defendant's actions may be admissible against him under Federal Rule of Evidence 404(b). Rule 404(b) establishes, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The Sixth Circuit has noted that Rule 404(b) "is actually a rule of inclusion rather than exclusion, since

only one use is forbidden and several permissible uses of such evidence are identified." *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985). To determine the admissibility of 404(b) evidence, a court must decide (1) whether there is sufficient evidence that the prior act occurred; (2) whether the evidence is relevant to an issue other than the defendant's character; and (3) whether the probative value is more prejudicial than probative under Rule 403. *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001).

Defendant does no more than state the evidence should be severed without any underlying support. He does not dispute that these events occurred, or that the evidence would be admissible under 404(b). Even if he did, the testimony of the three victims would be sufficient evidence that each of the prior acts occurred, and the evidence is relevant to many issues aside from Defendant's character.

The counts against Defendant as to each victim display a distinct signature. In *Mack*, the court considered admitting evidence of bank robberies the defendant had admitted to during a trial for a robbery he denied. In each robbery a man in a ski mask and a hooded sweatshirt burst into the bank, leapt over the teller counter on his way to the cash register, and then again on his way out of the bank. *Id*. at 553–54. "Although these three elements, by themselves, were not particularly unusual . . . the perpetrator's consistent use of the three in combination constituted a 'signature.'" *Id*. at 554. The evidence of the robberies the defendant had admitted to was then deemed admissible in his trial for the other robbery. *Id*. The evidence in this case establishes a more distinct signature than the evidence that was admissible in *Mack*, and similarly, would be admissible in each trial even if the counts against Defendant were severed.

Additionally, the evidence would be admissible to show Defendant's intent, lack of mistake or accident, or even to corroborate the victims' testimony if their credibility is attacked.

In a jailhouse recording, Defendant claimed that he blacked out during the altercation with A.H. — that it was all an accident. The fact that Defendant acted similarly on two separate occasions would be relevant to undermine his claim that he lacked the requisite intent to commit the crime. In addition, evidence of prior assaults, even on different victims, is admissible under 404(b) to establish absence of mistake or accident as to the current incident. *United States v. Haukaas*, 172 F.3d 542, 544 (8th Cir. 1999). Finally, as the government suggests, Defendant will likely question the credibility of the witnesses when they testify against him. When a witness's credibility is challenged, it is appropriate to rehabilitate her testimony through corroborative evidence. *United States v. Blakeney*, 942 F.2d 1001, 1018–19 (6th Cir. 1991).

However, the evidence is not automatically admissible once it has been established that it is relevant for an independent purpose under 404(b). Before admitting the prior acts evidence, a court must determine if the probative value of the evidence is substantially outweighed by its potential prejudicial effect. *Id*. at 1018. If so, the evidence must still be excluded.

That is not the case here. As demonstrated, there are various proper uses for the evidence aside from proving a character trait of Defendant. While the evidence concerning the alleged assaults is inevitably prejudicial, it does not rise to the level of unfair prejudice that substantially outweighs its probative value.

Because the evidence concerning the three incidents would be admissible if the counts were severed into different trials, and are properly joined under Federal Rule of Criminal Procedure 8, Defendant's motion to bifurcate the counts will be denied.

### III

Accordingly, it is **ORDERED** that Defendant's Motion to Remand, ECF No. 21, is **DENIED**.

It is further **ORDERED** that Defendant's Motion to Bifurcate, ECF No. 22, is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 25, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 25, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS
