UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WAYLON JAMES PEGO,

    *Petitioner*,

v.

UNITED STATES OF AMERICA,

    *Respondent*.

_____/

CRIMINAL CASE NO. 12-CR-20299
CIVIL CASE NO. 15-CV-12422

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE PATRICIA MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON PETITIONER'S MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE
(Doc. 57)**

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Petitioner's motion to vacate (**Doc. 57**) be **DENIED**, and that this civil case be **DISMISSED**.

### II.    REPORT

#### A.    Introduction

Pending before this Court, pursuant to a referral entered by District Judge Thomas Ludington on July 13, 2015, is Petitioner Waylon James Pego's ("Pego") motion under 28 U.S.C. § 2255 to vacate his federal custodial sentence. (Docs. 57, 62). Respondent has filed a response to that motion, and Pego has filed a reply. (Docs. 67, 69). Therefore, the motion is ready for Report and Recommendation without oral argument. *See* E.D. Mich. LR 7.1(f)(2).

**B.     Background**

Pego was charged in a thirty-two-count indictment with unlawful imprisonment, in violation of 18 U.S.C. §§13, 1151, 1152 (Counts 1, 6, 28); assault with a dangerous weapon with intent to do bodily harm, in violation of 18 U.S.C. §§ 113(a)(3), 1151, and 1153 (Counts 2, 30); domestic assault by a habitual offender, in violation of 18 U.S.C. §§ 117 and 1151 (Counts 3, 8, 31); witness tampering, in violation of 18 U.S.C. §1512(b)(1) (Count 4); interfering with electronic communications, in violation of 18 U.S.C. §§ 13, 1151, 1152 (Counts 5, 9); assault causing serious bodily injury, in violation of 18 U.S.C §§ 113(a)(3), 1151, and 1153 (Counts 7, 29); and aggravated sexual abuse, in violation of 18 U.S.C. §§2241(a)(1), 1151, and 1153 (Counts 10-27). (Doc. 17).

Respondent dropped Counts 10-25, and Pego was tried before a jury on Counts 1-9 and 26-31. The jury returned a verdict of guilty as to all counts. (Docs. 42, 43). District Judge Thomas Ludington sentenced Pego to a term of imprisonment of 360 months on Counts 26 and 27, and twenty-four months on Counts 1-9 and 28-32, to be served concurrently, to a five year term of supervised release, and ordered Pego to pay several monetary penalties. (Doc. 53 at 21).

Pego filed notice of appeal on March 13, 2013. (Doc. 46). On April 17, 2014, the United States Court of Appeals for the Sixth Circuit issued a decision in which it affirmed the decision of the lower court. (Doc. 54). Pego argued that the district court failed to issue a jury instruction that his prior convictions and threats should not be used to show propensity to commit violence; that Respondent made prejudicial statements during *voir dire*; that Respondent improperly introduced evidence of Pego's past history of violence during opening argument; that Respondent made improper use of an expert witness; and that his victims were

permitted to testify in a manner he found prejudicial. The Sixth Circuit found Pego's challenges unpersuasive and affirmed the lower court, noting several times the "overwhelming," "massive," and "extensive" evidence of Pego's guilt. (*Id.* at 3-6).

On July 6, 2015, Pego filed the instant motion to vacate his sentence under 28 U.S.C. § 2255. (Doc. 57). In that motion, Pego raises four grounds for relief: i) "a multiplicitious [sic] indictment led to a multiplicitious [sic] conviction and exposed Mr. Pego to the possibility of double jeopardy;" ii) "a fatal variance occurred during trial when [victim T.H.] was impeached on the witness stand and prejudiced Mr. Pego's defense by making him unable to respond to a time period 'reasonably near' the alleged offense conduct;" iii) ineffective assistance of trial and appellate counsel; iv) the trial court lacked jurisdiction to try him pursuant to *Saginaw Chippewa Indian Tribe of Michigan v. Granholm*, No. CIV. 05-10296-BC, 2010 WL 5185114, at *4 (E.D. Mich. Dec. 17, 2010). (Doc. 57 at 4-11).

On August 28, 2015, Pego filed a brief in support of his § 2255 motion. (Doc. 64). On October 7, 2015, Respondent filed a response. (Doc. 67). On October 28, 2015, Pego filed a reply. (Doc. 69).

### C. Analysis and Conclusions

Although res judicata does not apply in § 2255 proceedings, "the court may still exercise its discretion not to reconsider issues already decided at trial, on direct appeal, or in prior § 2255 proceedings." *Taylor v. United States*, 798 F.2d 271, 273 (7th Cir. 1986). The Supreme Court has found that "claims will ordinarily not be entertained under § 2255 that have already been rejected on direct review." *Reed v. Farley*, 512 U.S. 339, 358 (1994).

On the other hand, claims which could have been raised on direct appeal, but were not, are considered procedurally defaulted on indirect appeal unless the petitioner can show either i) cause and actual prejudice to excuse this failure, or ii) actual innocence. *See Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). Pego does not raise in his § 2255 motion any issues which have already been decided on direct appeal, thus the Court must determine whether the arguments he now raises were procedurally defaulted by failing to raise them on direct appeal. The majority of Pego's arguments in the instant motion are couched as ineffective assistance claims.[1] Claims which would have been procedurally defaulted may be properly raised on indirect appeal if couched as ineffective assistance claims. *See Brown v. United States*, No. 1:07-CR-09-CLC-SKL, 2015 WL 3626928, at *5 (E.D. Tenn. June 10, 2015). The Court will thus examine Pego's underlying claims with an eye to determining whether he received ineffective assistance of counsel.

### I.   Evidentiary Hearing Standard

Section 2255 states that

> [u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

---

[1] While ineffective assistance of counsel can provide the necessary "cause" to overcome procedural default, the Supreme Court has recognized that an ineffective assistance claim may itself be procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 447 (2000). However, because ineffective assistance claims are generally not considered on direct appeal, a petitioner does not waive ineffective assistance of counsel claims by failure to raise them on direct appeal. *See Massaro v. United States*, 538 U.S. 500 (2003).

4

28 U.S.C. § 2255(b). The Sixth Circuit has "observed that a Section 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is relatively light." *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citation omitted). "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007).

On the other hand, no hearing is required if the motion's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted). Additionally,

> The words 'grant a prompt hearing' are not magic words requiring a district judge, who is fully familiar with the circumstances under which a guilty plea was made, to duplicate procedures and conduct a hearing to resolve alleged fact issues which can and should be decided on the record that already exists.

*United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993). Where a Court finds that there is no material factual dispute which a hearing could address, the § 2255 motion should be dismissed. The Court will thus examine whether any such material factual disputes exist.

## II. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are governed by the Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id*. at 688. "Constitutionally effective

5

counsel must develop trial strategy in the true sense–not what bears a false label of 'strategy'–based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 489 (6th Cir. 2007). Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, the movant must show that, but for counsel's errors, the result would have been favorably different. *Id*. at 694. Failure to make the required showing under either prong of the *Strickland* test defeats the claim. *Id*. at 700.

### a. Failure to Investigate

Pego first asserts that his trial counsel was ineffective because he failed to interview prosecution witnesses, which could have resulted in the dismissal of some claims. (Doc. 64 at 19). When assessing failure to investigate claims, the Supreme Court has found that

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690–91. "The focus in failure-to-investigate claims, then, is the reasonableness of the investigation (or lack thereof)." *English v. Romanowski*, 602 F.3d 714, 726 (6th Cir. 2010) (quotation omitted). The Sixth Circuit has found that an attorney's conduct does not fall below the objective standard of reasonableness where the attorney chooses not to call as a witness someone whose testimony would likely be either unhelpful or self-

incriminating, and thus unlikely to assist the defendant's case. *See Polk v. Trombley*, No. 2:06-CV-10568, 2007 WL 2746614, at *7 (E.D. Mich. Sept. 19, 2007). On the other end of the spectrum, an attorney violates the duty to investigate where he or she does not investigate potential witnesses who suggested that someone other than the defendant committed the crime. *See Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). Thus, while "[d]efense attorneys do not have an absolute duty to investigate," they must pursue investigative leads insofar as it is reasonable to do so. *Goldsby v. United States*, 152 F. App'x 431, 435 (6th Cir. 2005)

Pego suggests that his trial counsel failed to investigate whether the neighbors of one of his victims, T.H., might have witnessed the alleged attacks or perhaps heard complaints from T.H. about Pego's conduct. (Doc. 64 at 19). However, he argues that it is not the content of this testimony that matters, but rather simply "the fact that defense counsel's [sic] failed to investigate this obvious avenue that serves to demonstrate ineffective assistance of counsel." (*Id*.). On the contrary, the content of a potential witness's statement is the crux of the issue. To demonstrate that his trial counsel was ineffective, Pego must do more than simply identify possible witnesses who *could* have challenged the government's case. Instead, he must point to specific witnesses who were available to testify, and he must state what the content of their testimony would have been. *See Buchan v. Scutt*, No. 08-12957, 2010 WL 5464252, at *6 (E.D. Mich. Dec. 30, 2010) ("Petitioner has failed to present the names of these witnesses or offer proof of the content of their testimony and how it would have affected the outcome of the trial. Petitioner has also failed to attach any affidavits sworn by the proposed witnesses or evidence as to whether they would have been able to testify. Absent such proof, Petitioner cannot establish that he was prejudiced by counsel's failure to call these witnesses . . . ."); *Dell*

*v. Straub*, 194 F. Supp. 2d 629, 650 (E.D. Mich. 2002) ("Defense counsel's failure to investigate, interview, or present alibi witnesses does not amount to the ineffective assistance of counsel, because petitioner has failed to identify these witnesses, indicate their availability, or specify the content of their testimony.").

In his reply, Pego notes that Rachel Davila, one of T.H.'s neighbors, testified before the grand jury "that she did not take notice of any of the offense behavior alleged," which is to say that she did not see or hear Pego attacking T.H. (Doc. 69 at 5). The Court does not currently have access to Davila's grand jury testimony due to the "long-established policy that maintains the secrecy of the grand jury proceedings in federal courts." *Dennis v. United States*, 384 U.S. 855, 869 (1966). This policy can be overcome if a party demonstrates a "particularized need" for the grand jury testimony, including "impeach a witness, to refresh his recollection, or to test . . . credibility." *Ross v. Pineda*, 549 F. App'x 444, 456 (6th Cir. 2013). This analysis is unnecessary here, because the Court finds that even if Pego's claims regarding Davila's testimony are fully credited, it does not prove that he received ineffective assistance of counsel. Davila's testimony that she did not hear or see Pego's assaults of T.H. provides nothing substantive. Even if Pego were to claim it is some, albeit weak, evidence that the assaults may not have occurred, it would have been particularly unconvincing given the combination of T.H.'s testimony of the assaults and the overwhelming evidence of Pego's guilt. (Doc. 51 at 272-74). An attorney is not required to raise every colorable argument for his or her assistance to be effective. *See Jones v. Barnes*, 463 U.S. 745, 753 (1983) ("A brief that raises every colorable issue runs the risk of burying good arguments."). Furthermore, Pego's trial counsel attempted to explain evidence of physical injuries and screaming on the part of his

alleged victims as the product of "rough," but voluntary, sexual escapades. (Doc. 52 at 400, 487-88). Having adequately accounted for the possibility of screams overheard by neighbors, Pego's trial counsel was not then required to pursue a contradictory explanation.

### b.     Failure to Challenge Jurisdiction

Pego next suggests that his trial counsel erred by failing to challenge the jurisdictional propriety of the indictment. (Doc. 64 at 20-21). Pego asserts that the Carter Street residence where one of his attacks occurred has "since 1872 been . . . under the jurisdiction of the State of Michigan," a suggestion which he bolsters with a title search and the allegation that Michigan collects *ad valorem* taxes on that property. (*Id.* at 28). Pego also argues that the Maple Street residence was under Michigan jurisdiction in August 2010 when he assaulted one of his victims. (*Id.*). This court's jurisdiction extends to "all land within the limits of any Indian reservation under the jurisdiction of the United States, notwithstanding the issuance of any patent . . . ." 28 U.S.C. § 1151 (defining Indian Country). Therefore, even though a patent has issued, making the land alienable and thus taxable by the state or local government, *see Cass County v. Leech Lake Band of Chippewa Indians*, 524 U.S. 103 (1998) and *Michigan v. United States*, 524 U.S. 923 (1998), the land within reservation bounds remains Indian Country such that this court may properly exercise jurisdiction over crimes committed on such land. 28 U.S.C. § 1151.

Pego also argues that "the jurisdiction of the Federal Government rest [sic] on the case of *Saginaw Chippewa v. Granholm* (E.D Mich. Dec 17, 2010)." (*Id.* at 28). *Saginaw Chippewa Indian Tribe of Michigan v. Granholm*, No. CIV. 05-10296-BC, 2010 WL 5185114 (E.D. Mich. Dec. 17, 2010) was a complex case which, in the simplest terms, represented the

9

culmination of a dispute between the State of Michigan and the Saginaw Chippewa Indian Tribe, the latter of which sought a declaratory judgment that the extent of the Isabella County Reservation had not been diminished since it was created in 1855. The multi-year litigation terminated in a settlement and corresponding judgment which reaffirmed that the bounds of the Isabella Reservation had "not ever been diminished or disestablished in any way." *Id.*, Doc. 284. Pego attempts to relitigate the *Saginaw Chippewa* case, apparently under the impression that the decision is dispositive as to whether he could be tried under federal law. He asserts that the court's decision in that matter "ignored Supreme Court precedent, contrary historical facts, and the examination of the congressional intent," was moot, overstepped the court's authority, was issued in violation of the Case or Controversy Clause of the United States Constitution. (Doc. 64 at 28-41).

Pego's argument is novel, but unpersuasive. As the court in *Saginaw Chippewa* recognized in its judgment, the bounds of the Isabella Reservation have not been diminished since its creation. The Maple Street and Carter Street residences where Pego committed his assaults are both north of the M-20 highway, south of West Pickard Road, east of South Crawford Road, and west of South Isabella Road, thus placing both locations well within the current and historical boundaries of the Isabella County Reservation. *See* Saginaw Chippewa Indian Tribe - Tribal Land Map, http://www.sagchip.org/planning/triballandmap.htm#.VqqPA_krLcs, last visited January 28, 2016. The settlement and judgment reached in *Saginaw Chippewa* remains good law, having not been overturned by the Sixth Circuit or abrogated by later trial court decisions. Pego may not use this collateral attack on his criminal conviction to seek review of the decision reached

10

in *Saginaw Chippewa*. Similarly, insofar as Pego desires to impugn his trial and appellate counsel for not challenging the jurisdictional propriety of his charges, a criminal trial is not the proper place to seek reconsideration of an entirely separate case.

Pego also argues that his conviction was obtained through the improper *ex post facto* application of the *Saginaw Chippewa* decision. (Doc. 64 at 42-44). He asserts that, because some of his assaults occurred prior to the issuance of that decision, and because the court would not have jurisdiction over his crimes but for that decision, his convictions were obtained in violation of the *ex post facto* provisions of the Constitution. Article I, Section 10 of the United States Constitution prohibits the states from passing any "*ex post facto* Law." Generally, there is an *ex post facto* violation when a law punishes, as a crime, an act which was not a crime when committed, increases the punishment for a crime after its commission, or deprives a defendant of a defense available at the time the act was performed. *Collins v. Youngblood*, 497 U.S. 37, 52 (1990).

If the court's jurisdiction over Pego's crimes was premised on the issuance of a court decision which occurred after the date of his crimes, his argument would have some plausibility. *See Means v. N. Cheyenne Tribal Court*, 154 F.3d 941, 948 (9th Cir. 1998) overruled on other grounds by *United States v. Enas*, 255 F.3d 662 (9th Cir. 2001) (holding that the retroactive application of a statute which permitted a defendant to be charged in tribal court was barred by the *ex post facto* clause). Pego's *ex post facto* argument fails, however, because the court did not obtain jurisdiction over his criminal claim through the *Saginaw Chippewa* decision. The court's judgment in *Saginaw Chippewa* did not expand the borders of the Isabella Reservation, but rather established that the borders had "not ever been diminished

or disestablished in any way." *Saginaw Chippewa*, 05-10296-BC, Doc. 284 at 3. Consequently, that decision merely confirms the federal court's authority to adjudicate complaints relating to Pego's pre-2010 criminal conduct. Because Pego's argument is non-meritorious, his trial and appellate counsel cannot be considered ineffective for failing to raise it. *See Strickland*, 466 U.S. at 668-700.

Pego also challenges the jurisdictional propriety of his conviction by arguing that he is not an "Indian," as that is a "RACIAL term and not even a correct one," but rather describes "[a] person from India." (Doc. 64 at 20). Pego was charged, in part, under 18 U.S.C. § 1152 and § 1153, both of which apply to persons who are "Indian" and who perpetrate certain crimes in "Indian country." Pego admits that he is a "member of a FEDERALLY RECOGNIZED TRIBE" (*Id*. at 20-21), and elsewhere notes that he is a "Native American member of the Saginaw Chippewa Indian Tribe." (*Id*. at 2, 21). While "Indian" as a descriptor for members of Native American tribes has fallen out of favor in common parlance, it remains in use as a legal term of art. The Supreme Court established in *United States v. Rogers*, 45 U.S. 567 (1845) that, to be considered an "Indian," an individual must have some degree of Indian blood and must be recognized as an Indian. As Respondent aptly notes, Pego stipulated to his status as an Indian at trial (Doc. 51 at p.149), and has represented to the Court in the instant *pro se* motion that he is "a Native American member of the Saginaw Chippewa Indian Tribe" (Doc. 64 at 2). Pego is thus an Indian; the district court consequently had jurisdiction to hear charges against him brought pursuant to 18 U.S.C. § 1152 and § 1153. Pego's trial and appellate attorneys were not ineffective for failing to raise this meritless objection, and he has procedurally defaulted on that claim by failing to raise it on direct appeal.

### c. Insufficiency and Multiplicity

Pego next argues that his attorneys were ineffective for failing to challenge the sufficiency of the indictment. (Doc. 64 at 21-22). By failing to request a bill of particulars, Pego argues that he was exposed to the possibility of double jeopardy, because the "first superseding indictment listed 18 counts of aggravated sexual assault occurring over an 18 month period of time" with the "only delineation an arbitrary date assigned by the prosecutor" on the basis of T.H.'s statements before the grand jury that she was assaulted on a weekly basis for eighteen months. (*Id*. at 22). Sixteen of these eighteen counts were dropped at trial, and Pego was convicted on only two counts of sexual assault. (Doc. 67 at 6-7). Pego concludes that his "conviction on two counts of sexual assault was multiplicitous and in violation of his right to be free from double jeopardy." (*Id*.).

In *Valentine v. Konteh*, 395 F.3d 626, 638 (6th Cir. 2005) the Sixth Circuit found that a criminal defendant's ability to defend himself was unconstitutionally compromised by an indictment where "forty criminal counts were not anchored to forty distinguishable criminal offenses," insofar as each count was "identically-worded and factually-indistinguishable" and "did not alleged specific dates, times, and locations." The court concluded that "an indictment is only sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy." *Id*. at 631. The court clarified that an indictment need not "allege the date, hour, and precise location of crimes. Instead, the defendant, the judge, and the jury must be able to tell one count from another." *Id*. at 637.

In *Fawcett v. Bablitch*, 962 F.2d 617, 619 (7th Cir. 1992) the Seventh Circuit upheld the conviction of a defendant who was found to have perpetrated two sexual assaults on a minor at some point within a six-month period. The court found that, while a defendant would have a difficult time providing an alibi for a six-month period, such a charge provided sufficient notice to mount a defense against the charges.

In this case, counts twenty-six and twenty-seven contain estimated dates, the elements of the charged offense, and the identity of the alleged victim. (Doc. 17 at 11-12). Because these counts provide the "general time period" in which the acts occurred, "the number of acts committed," and "the kind of act or acts committed" with sufficient particularity, they provide provided sufficient detail for Pego to mount his defense. *See Leonard v. Perez*, No. 2:12-CV-02161-JKS, 2015 WL 5255357, at *13 (E.D. Cal. Sept. 9, 2015). Because Pego's insufficiency argument is without merit, his trial and appellate counsel were not ineffective for failing to raise it.

Pego's insufficiency argument bleeds into a multiplicity claim. He asserts that his appellate attorney should have objected to his conviction on counts twenty-six and twenty-seven, because those counts "should have been merged into one count at minimum." (Doc. 64 at 25). Pego does not provide any support for the argument that these counts actually represent a singular act of criminal conduct. Count twenty-six avers that Pego "[i]n or around May 2011" and in Indian country knowingly caused T.H. to engage in a sexual act through the use of force, in violation of 18 U.S.C. § 2241(a)(1), whereas count twenty-seven alleges that Pego committed the same act against the same victim, but in June 2011. (Doc. 17 at 11-12). In her testimony at trial, victim T.H. asserted that Pego sexually assaulted her on two occasions in

August 2011, at an interval of "[m]aybe a couple weeks." (Doc. 51 at 273). A separation of several weeks between sexual assaults is more than sufficient to support multiple counts for that criminal conduct. *See United States v. Tom*, 961 F.2d 217 (9th Cir. 1992) (finding that a defendant who sexually assaulted a victim in four different locations in the course of a single extended attack was properly charged with four counts of sexual assault). Pego's counsel was also not ineffective on this basis.

### d.     Impeachment of T.H.

Pego next argues that his trial counsel was ineffective for failing to challenge the testimony of victim T.H., who "testified to three different time periods for the alleged offense conduct," and suggested that her relationship with Pego ended in June 2011, yet later testified that she was also attacked in August 2011. (Doc. 64 at 22). Respondent aptly notes that T.H.'s grand jury testimony was far more damaging to Pego's case, and formed the basis for sixteen counts of aggravated sexual abuse, each of which could have resulted in a term of imprisonment up to life. (Doc. 67 at 15). Cross-examination of T.H. might have prompted her to return to her statements before the grand jury, reopening Pego to the possibility of sixteen additional convictions. In choosing not to impeach T.H.'s inconsistent testimony, Pego's trial counsel acted within "the broad range of reasonable trial conduct under *Strickland*." *Schauer v. McKee*, 401 F. App'x 97, 101 (6th Cir. 2010).

### e.     Motion for Judgment of Acquittal

Pego next argues that his trial counsel was ineffective for failure to submit a motion for judgment of acquittal after Respondent rested its case. (Doc. 64 at 23-24). Pego does not identify which of the government's charges lacked evidentiary support. This argument is

15

wholly without merit where Pego was convicted on all counts submitted to the jury and the Sixth Circuit made repeated note of the strength of the evidence against him on direct appeal. A motion for judgment of acquittal would have been fruitless, thus Pego's trial counsel was not ineffective on this basis.

### f. Failure to Inform Pego of His Potential Sentence

Pego next argues that his trial counsel failed to inform him of his potential sentencing exposure if convicted at trial. (Doc. 64 at 25-26). He asserts that he "had no reliable information about the possible outcome at trial if he decided not to enter a plea." (*Id*. at 26). As Respondent points out, Pego was informed that he risked a thirty-year sentence if he failed to accept the plea offer on several occasions. (Doc. 67 at 16-17). In the April 23, 2013, arraignment on the first superseding indictment, Pego's trial counsel stated unequivocally that "if [Pego] doesn't take the [plea offer] . . . [and] if he was convicted across the board on all the other counts with all the other things factored in, he could be facing a 30-year sentence." (Doc. 49 at 10). Pego's assertion that his trial counsel was ineffective for failing to inform him of the sentence he faced if he went to trial is thus directly contradicted by the record, and wholly without merit.

### g. Variance

Pego finally argues that his conviction on counts twenty-six and twenty-seven were the product of a fatal variance, insofar as victim T.H.'s testimony at trial was "vastly different from her Grand Jury testimony as evidenced in the record." (Doc. 64 at 8-11).[2] In her grand

---

[2] Pego does not specifically argue that his attorneys were ineffective for failing to raise this claim, but because Pego's ability to raise the argument would be procedurally defaulted unless

jury testimony, T.H. stated that she was sexually assaulted on an approximately weekly basis over the course of an eighteen month relationship. (Doc. 67, Ex. A at 29). During trial, T.H. recanted on the majority of her testimony, stating that she dated Pego for approximately two-and-one-half years, and that "only a couple of incidences" of sexual assault occurred, and later clarified that she was sexually assaulted "maybe twice." (Doc. 51 at 268-69). T.H. also testified at trial that she was unsure when the two sexual assaults occurred, but that she believed they occurred in August of 2011, with "[m]aybe a couple weeks" between the assaults. (*Id*. at 273). T.H. also stated that the assaults occurred around the middle of the relationship. (*Id*.).

Pego calculates that, since his relationship with T.H. began in December 2008 or January 2009 and resulted in 2012, the assault must have occurred in February or March of 2011. (Doc. 64 at 14). Pego also notes that T.H. said she "got out of the relationship" following an attack in June 2010. (Doc. 51 at 276). Pego thus finds an inconsistency between T.H.'s statement that she no longer dated him after 2010, yet she was attacked in August 2011 during the "middle of the relationship." (Doc. 64 at 14). Pego ignores T.H.'s testimony before the grand jury that she continued to date Pego "on and off" for up to one year prior to the date of the May 2012 grand jury proceedings. (Doc. 67 Ex. A, at 28). There is thus no reason to believe that T.H.'s testimony before the grand jury is inconsistent with her testimony at trial that Pego sexually assaulted her twice in August 2011.

---

he received ineffective assistance of counsel, the Court will examine it in the context of ineffective assistance.

Pego also argues that the two to three month gap between the August 2011 dates on which T.H. alleges she was assaulted and the May and June 2011 counts on which he was convicted is excessively large and thus creates a fatal variance in his conviction. (Doc. 64 at 15-16). "An indictment may be the subject of an actual amendment, a constructive amendment, or a variance." *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007). A variance "occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Kuehne*, 547 F.3d 667, 683 (6th Cir. 2008).

A variance warrants remand only where it "affect[s] the defendant's substantial rights." *United States v. Napier*, 787 F.3d 333, 350 (6th Cir. 2015). In turn, a defendant's substantial rights "are affected only when the defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006) (quotation omitted). A variance in time is generally not fatal provided that the "government proves that the offense was committed on any day before the indictment and within the statute of limitations" *United States v. Schneider*, 959 F. Supp. 2d 1036, 1043 (E.D. Mich. 2013) (quoting *United States v. Scheuneman*, 712 F.3d 372, 379 (7th Cir. 2013)), and where the date of the offense is not an element of the crime, *see United States v. Daggs*, 448 F. App'x 504, 508 (5th Cir. 2011). There is no indication that Pego was prosecuted beyond the statute of limitations, the date of his offense is not an element of the crime pursuant to 18 U.S.C. § 2241(a)(1), and the offense undoubtedly occurred prior his indictment. Consequently, the relatively minor variance in

dates here does not require remand. Pego's trial and appellate counsel were not ineffective for failing to raise this meritless argument.

### D. CONCLUSION

In summary, Pego's arguments are entirely without merit. Insofar as his trial and appellate counsel failed to present evidence or arguments necessary to persuade the jury or Sixth Circuit of his innocence, this was the result of the overwhelming evidence of his guilt rather than any failure of representation.

For the reasons stated above the Court **RECOMMENDS** that Petitioner's motion under § 2255 (**Doc. 57**) be **DENIED**, and that this civil case be **DISMISSED**.

### III. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 12, 2016         S/ PATRICIA T. MORRIS
                                Patricia T. Morris
                                United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Waylon James Pego c/o Diane Pego at 282 S. Summerton Road, Mt. Pleasant, MI 48858.

Date: February 12, 2016         By s/Kristen Krawczyk
                                Case Manager to Magistrate Judge Morris